IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | ) |
| | ) |
| v. | ) |
| | ) Criminal No. 23-cr-00237-CJN |
| **JAY JAMES JOHNSTON**, | ) |
| | ) |
| **Defendant**. | ) |
| | ) |

## MOTION TO COMPEL DISCOVERY

Defendant Jay James Johnston, by and through the undersigned counsel, and pursuant to Rules 5(f) and 16 of the Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83 (1964), *Giglio v. United States*, 405 U.S. 150 (1972), *Kyles v. Whitley*, 514 U.S. 419 (1995), Rule 5.1 of the Local Rules of Criminal Procedure for the District of Columbia, and 18 U.S.C. § 3661 respectfully moves this Court for an Order compelling the government to comply with its obligations to provide discovery material for the preparation of his sentencing. At sentencing, the Court is required to, "avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Relevant here, because Mr. Johnston's case involves several other individuals all being sentenced for the same offense, the particulars of the conduct of his codefendants are directly relevant to the severity of their crimes. At sentencing, Mr. Johnston intends to highlight the differences in the conduct alleged *in the same indictment*, and advocate for a proportionate sentence. Accordingly, the discovery of his codefendants is necessary to prepare for sentencing and conclude this matter.

On June 17, 2024, Mr. Johnston entered into a plea agreement with the government in which he agreed to plead guilty to obstructing officers during a civil disorder in violation of 18 U.S.C. § 231(a)(3), or Count One of the Indictment, and in which he agreed to stipulate to the

facts as represented in the accompanying statement of offense.[1] *See* Plea Agreement (July 8, 2024) (ECF No. 160); Statement of Offense (July 8, 2024) (ECF No. 161). On July 8, 2024, the Court held a hearing for the purpose of allowing Mr. Johnston to change his plea to not guilty as to Count One of the Indictment and to ratify the Plea Agreement. *See* Minute Entry (July 8, 2024). Mr. Johnston's sentencing is now scheduled before this Court on October 7, 2024, at 10:00 AM, although Mr. Johnston recently filed a motion to continue sentencing. *See* Mot. (Sept. 3, 2024) (ECF No. 176).

## I. BACKGROUND

On June 28, 2023, the government filed motions requesting an order to disclose discovery material protected by Rule 6(e) of the Federal Rules of Criminal Procedure (Mot. (June 28, 2023 (ECF No. 28) and for a protective order governing discovery (Mot. (June 28, 2023) (ECF No. 29), both of which were granted, with orders of the same issued on July 3, 2023. *See* Minute Order (July 3, 2023), Order (July 3, 2023) (ECF No. 32). On November 17, 2023, defense counsel wrote the government formally requesting the production of discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure, *Brady* and its progeny, Rule 5.1 of the Local Rules of the District Court for the District of Columbia, and the Court's June 15, 2023 Minute Order. Ex. A, Letter from Stanley E. Woodward, Jr., Counsel for Defendant Johnston to Kaitlin Klamann, *et al.*, Assistant United States Attorney ("AUSA"), Department of Justice ("DOJ") (Nov. 17, 2023). Among his various requests, Mr. Johnston requested specific evidence related his alleged violation

---

[1] To date the Indictment has been superseded twice. *See* Ind. (July 19, 2023) (ECF No. 41); Superseding Ind. (Sept. 13, 2023) (ECF No. 71); Second Superseding Ind. (June 27, 2024) (ECF No. 150). Mr. Johnston entered into his plea agreement with the government on June 17, 2024 – before the government filed the now-operative Second Superseding Indictment on June 28, 2024. *See* Plea Agreement (July 8, 2024) (ECF No. 160). While the Indictment was superseded after the execution of Mr. Johnston's Plea Agreement, the charges pertinent to Mr. Johnston were not altered and thus did not impact his assent to his Plea Agreement. In an effort to maintain a clear record, Mr. Johnston was arraigned with respect to the charges Second Superseding Indictment on July 8, 2024, which was then followed by his Plea Agreement Hearing.

2

of 18 U.S.C. § 231(a) as charged in Count One. Specifically, Mr. Johnston requested the following with respect to his § 231(a) charge:

> (1) All documents and other evidence related to the allegation that Mr. Johnston obstructed, impeded, or interfered with a law enforcement officer who was lawfully engaged in lawful performance of official duties.
>
> (2) All information regarding mitigation by Mr. Johnston, including but not limited to any evidence that he assisted others on January 6, 2021, including any U.S. Capitol Police or Metropolitan Police Department Officers.
>
> (3) All information relating to the allegation that Mr. Johnston adversely affected commerce and the movement of any article and commodity in commerce and/or to the conduct and performance of any federal protected function on January 6, 2021.
>
> (4) All information relating to the allegation that Mr. Johnston aided and abetted any such obstruction, impediment, or interference with a law enforcement officer engaged in the lawful performance of official duties on, before, or after January 6, 2021.
>
> (5) All information relating to the allegation that Mr. Johnston aided and abetted any alleged civil disorder that adversely affected commerce and the movement of any article and commodity in commerce and/or to the conduct and performance of any federal protected function on, before, or after January 6, 2021.

*Id.* at 7-8. The government responded to Mr. Johnston's November 17, 2023, discovery demand over a month later on January 9, 2024, and agreed to supplement its discovery productions. Ex. B, Letter from Katilin Klamann, AUSA, DOJ to Stanley E. Woodward, Jr. Counsel for Defendant Johnston (Jan. 9, 2024).

On February 6, 2024, the government provided all defense counsel of record with all the case-specific discovery for each defendant. *See* Ex. C at 4-5, Email Correspondence between Katilin Klamann, AUSA, DOJ to Stanley E. Woodward, Jr. Counsel for Defendant Johnston

(Feb. 6, 2024 at 11:16 AM EST). In its transmission email, the government advised that the production materials were available through USAfx but would eventually expire from the platform within 60 days unless otherwise downloaded, thereby rendering the discovery production inaccessible upon expiration of the link. *Id.* On June 10, 2024, the undersigned counsel for Mr. Johnston informed the government that he was unable to download the government's production before its expiration and requested a renewed access link. *Id.* at 4, Email from Stanley E. Woodward, Jr. Counsel for Defendant Johnston to Katilin Klamann, AUSA, DOJ (June 10, 2024 at 1:50 PM EDT). Having received no response to his June 10, 2024 inquiry, defense counsel followed up on his request one week later on June 17, 2024. *Id.* at 4, Email from Stanley E. Woodward, Jr. Counsel for Defendant Johnston to Katilin Klamann, AUSA, DOJ (June 17, 2024 at 9:36 AM EDT). This time, the government promptly responded, demanding an explanation as to why the production was not downloaded, to which counsel for Mr. Johnston explained that due to the voluminous size of the production, downloading the production via the conditions available to him were simply not possible. *See id.* at 3 Email from Katilin Klamann, AUSA, DOJ to Stanley E. Woodward, Jr. Counsel for Defendant Johnston (June 17, 2024 at 9:43 AM EDT); *see also id.* at 2-3, Email from Stanley E. Woodward, Jr. Counsel for Defendant Johnston to Katilin Klamann, AUSA, DOJ (June 17, 2024 at 9:51 AM EDT). In particular, counsel for Mr. Johnston informed the government that "the download was in fact sizable [sic] and requires a constant ethernet connection with sufficient bandwidth[,]"[2] and that the download could not be "paused and re-

---

[2] Indeed, the government is intimately familiar with the technological considerations and potential issues arising from the voluminous size of discovery relating to the Capitol Breach cases, and accordingly filed a notice in the instant matter which contained 62 pages of various memoranda detailing these issues, "for the purpose of illustrating the government's consistent and diligent efforts to produce voluminous discovery." Notice at 1 (June 28, 2023) (ECF No. 30). Notably, the memoranda provide well-document insight into the progress, as well as continued complications, in sharing the distinctly voluminous discovery present in the Capitol Breach cases.

4

started[,]" conditions which had been unavailable to defense counsel due to his complicated travel schedule in the time the discovery materials were available for download. *Id.* In response, the government informed defense counsel that it would reproduce the materials but that it could take up to two weeks to become available, further demonstrating the voluminous size of the production, thereby confirming the complicated nature of obtaining access to it. *Id.* at 2, Email from Katilin Klamann, AUSA, DOJ to Stanley E. Woodward, Jr. Counsel for Defendant Johnston (June 17, 2024 at 2:25 PM EDT).

Once again, counsel for Mr. Johnston did not receive access to the requested discovery materials from the government and inquired with the government about the status of his request on August 21, 2024. *Id.* at 1-2, Email from Stanley E. Woodward, Jr. Counsel for Defendant Johnston to Katilin Klamann, AUSA, DOJ (Aug. 21, 2024 at 9:38 PM EDT). In response, the government declined to again make the discovery available, despite having previously agreed to do so, citing that the production "only included co-defendant discovery[,]"; and directed defense counsel to the executed plea agreement, in which Mr. Johnston agreed to, "forego the right to any further discovery or disclosures already not provided at the time of the entry of. . . [the] guilty plea." *Id.* at 1, Email from Katilin Klamann, AUSA, DOJ to Stanley E. Woodward, Jr. Counsel for Defendant Johnston (Aug. 22, 2024 at 7:06 AM EDT) (citing Plea Agreement at 7 (July 8, 2024) (ECF No. 160)). As of the date of this filing, and despite representing that it would provide access to requested discovery materials, the government has not made the requested discovery materials available to counsel for Mr. Johnston.

## II.  LEGAL STANDARD

Government disclosure of exculpatory and impeachment evidence is essential to the constitutional guarantee to a fair trial. *See Brady*, 373 U.S. at 87; *Giglio*, 405 U.S. at 154. The

law requires the disclosure of exculpatory and impeachment evidence when such evidence is material to guilt or punishment. *Brady*, 373 U.S. at 87; *Giglio*, 405 U.S. at 154. Because *Brady* and *Giglio* are constitutional obligations, *Brady* and *Giglio* evidence must be disclosed regardless of whether the defendant makes a request for the information. *See Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995). The government must disclose both inculpatory and exculpatory evidence. *United States v. Marshall,* 132 F.3d 63, 67 (D.C. Cir. 1998). "Inculpatory evidence, after all, is just as likely to assist in 'the preparation of the defendant's defense' as exculpatory evidence" because "it is just as important to the preparation of a defense to know its potential pitfalls as to know its strengths." *Id.* *Accord United States v. O'Keefe*, No. 06-cr-249, 2007 U.S Dist. LEXIS 31053, at *6 (D.D.C. Apr. 27, 2007) ("[E]vidence that is 'material' . . . is not limited to evidence that is favorable or helpful to the defense and does not immunize inculpatory evidence form disclosure." (citing *Marshall*, 132 F.3d at 67)).

A sentencing court is tasked with imposing a sentence that is "sufficient, but not greater than necessary. . .". 18 U.S.C. § 3553(a). In doing so, the sentencing court shall consider, various factors, including, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Concurrently, "*[n]o limitation* shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661 (emphasis added); *see also* U.S. Sentencing Guidelines ("U.S.S.G.") § 1B1.4 ("In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant. . ."). For a defendant to put forth an extensive range of

evidence, which will ultimately to be reviewed by the sentencing judge contemplating the appropriate sentence, is as engrained in our judicial system as our entitlement to the rights imbued in the Constitution. *See United States v. McCrory*, 930 F.2d 63, 68 (D.C. Cir. 1991) (citing *Williams v. New York*, 337 U.S. 241, 246 (1949) ("'Both before and since the American colonies became a nation,' . . . courts have exercised 'wide discretion in the sources and types of evidence used to assist [them] in determining the kind and extent of punishment to be imposed within limits fixed by law.'")). Thus, "'[h]ighly relevant--if not essential--to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics.'" *Pepper v. United States*, 562 U.S. 476, 488 (2011) (quoting *Williams v. New York*, 337 U.S. 241, 246 (1949(). Accordingly, to permit a sentencing court to contemplate the, "widest possible breadth of information about a defendant 'ensures that the punishment will suit not merely the offense but the individual defendant.'" *Id.* (quoting *Wasman v. United States*, 468 U.S. 559, 564 (1984)).

### III. ARGUMENT

    a. The Government is Constitutionally Obligated to Provide the Requested Discovery to Mr. Johnston

Mr. Johnston and his counsel are entitled to the discovery it requests from the government to prepare for his upcoming sentencing. The government has denied Mr. Johnston and his counsel renewed access to discovery on multiple occasions – both before Mr. Johnston and the government assented to his Plea Agreement, and in the time thereafter. In disclosing the discovery to Mr. Johnston and his co-defendants in the first place, the government acknowledged its constitutional obligations to provide material evidence to all defendants in the instant matter. The government's *constitutional obligations* to provide material evidence to Mr. Johnston and his counsel does not cease to exist simply because the access to the discovery has expired. *See Brady*, 373 U.S. at 87;

*Giglio*, 405 U.S. at 154. To wit, the government cites the following language of Mr. Johnston's Plea Agreement to support their refusal to provide access to the requested discovery: "Your client agrees to forego the right to any further discovery or disclosures of *information not already provided at the time of the entry of your client's guilty plea*." Plea Agreement at 7 (July 8, 2024) (ECF No. 160) (emphasis added). As explained above, however, Mr. Johnston's counsel did not and does not now seek *new* discovery, nor does he ask for any discovery otherwise not already provided at the time Mr. Johnston and the government entered into its plea agreement on June 17, 2024. Indeed, counsel for Mr. Johnston followed up on the same e-mail thread requesting the same discovery initially provided by the government on February 6, 2024, twice before the government's plea offer expired at 11:59 PM EDT on June 17, 2024: once on June 10, 2024, and again on June 17, 2024 at 9:36 AM EDT. *See* Ex. A at 1-2, 5. After the execution of Mr. Johnston's Plea Agreement with the government and a hearing on the same, counsel for Mr. Johnston inquired with the government once more about receiving renewed access to this discovery in anticipation of Sentencing – without requesting additional or new information – on August 21, 2024, in which he was again met with gratuitous resistance from the government. *See id.* at 1-2.

    b. <u>The Requested Discovery is Fundamental to Enable the Sentencing Court to Determine the Appropriate Sentence for Mr. Johnston</u>

Not only does the government's continued refusal to provide access to the discovery Mr. Johnston and his counsel request violate his right to that discovery pursuant to *Brady* and its progeny, but it is also in clear conflict with the "fundamental principles" of sentencing. *See McCrory*, 930 F.2d 63, 68 (D.C. Cir. 1991) ("[I]t is a 'fundamental sentencing principle' that 'a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.'" (quoting *United States v. Campbell*, 684 F.2d 141, 152 (D.C. Cir. 1982))). At the same time, a sentencing court "shall

8

impose a sentence sufficient, but not greater than necessary," which entails examining various factors, including, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).

Whether the requested discovery is ultimately exculpatory or inculpatory as to Mr. Johnston's guilt, in tandem with the notion codified at 18 U.S.C. § 3661 that there are no limitations on what information a defendant may provide to a court in for consideration of the sentence to be imposed, it remains integral for the defense to review in anticipation of sentencing.  Section 1B1.4 of the U.S.S.G. provides that, "[i]n determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the *background, character and conduct of the defendant. . .*"  U.S.S.G. § 1B1.4 (emphasis added).  And while the U.S. Sentencing Guidelines are no longer binding on a court, this Court has acknowledged that, "factors that district courts must consider at sentencing are vague, open-ended, and conflicting. . . every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender."  *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir.  2008).

Notwithstanding the fact that Mr. Johnston and his counsel are already entitled this discovery under *Brady* and its progeny, it is integral for Mr. Johnston and his counsel to review this discovery because it is likely to reveal the evidence the government cites to support its allegations that Mr. Johnston and his co-defendants obstructed officers during a civil disorder in violation of 18 U.S.C. § 231(a)(3), which is precisely the type of  information that the Court will consider when it determines the appropriate sentence for Mr. Johnston.  Even more critically, to have access to the requested discovery will enable Mr. Johnston and his counsel to prepare a narrative of events that distinguishes his conduct from that of his co-defendants and those present

at the events that took place at the U.S. Capitol on January 6, 2021. For example, Mr. Johnston and the government engaged in significant debate as to the terms of the multiple iterations of the plea offer and its accompanying statement of offense in the months preceding eventual execution of the Plea Agreement, and although Mr. Johnston and the government ultimately entered into a plea agreement, the principal reason Mr. Johnston elected to enter into the agreement was because the alternative – that is, to go to trial on the merits – proved to be the riskier option all factors considered.

Additionally, the government, in light of the ongoing factual disputes in the statement offense, amended its plea offer to allow Mr. Johnston to dispute the applicability of one of the two specific offense characteristic enhancements, that an officer sustained bodily injury under U.S.S.G. § 2A2.4(b)(2). *See* Plea Agreement at 2-3 (July 8, 2024) (ECF No. 160) ("Your client reserves the right to oppose this two-level increase."). As such, the requested discovery is necessary to allow Mr. Johnston and his counsel an opportunity to distinguish his individual conduct from his co-defendants and the conduct of others present at the Capitol at the events of January 6, to subsequently enable the Court to meaningfully consider whether it should deviate from the U.S.S.G. *See* 18 U.S.C. § 3661(a)(6) (emphasizing the sentencing court's, "need to avoid unwarranted sentence disparities among defendants. . .").

### i. The Requested Discovery is Necessary to Permit Mr. Johnston to Distinguish his Conduct from that of his Co-Defendants

In the instant matter, the conduct of Mr. Johnston and his co-defendants varies widely with respect to their alleged violations of 18 U.S.C. § 231(a). To distinguish Mr. Johnston's conduct from that of his co-defendants and all other participants at the Capitol on January 6 is an integral issue he must present to the Court at his sentencing, and the requested discovery will enable him to do so. Indeed, Mr. Johnston's conduct was less severe than that of his co-defendants, which

necessarily warrants the imposition of a lesser sentence. And although government is permitted broad latitude in determining with whom and how to charge a defendant, because Mr. Johnston's conduct is less severe than the conduct of the individuals with whom he was indicted, it is reasonable to presume that he was charged with these specific individuals to make him appear guilty by association. Accordingly, not only will the discovery Mr. Johnston seeks to compel enable him to distinguish *his* conduct from the conduct of other January 6 participants and all convictions resulting from an 18 U.S.C. § 231(a)(3) charge, but it will also permit him distinguish his conduct from that of his similarly charged co-defendants. The requested discovery will further allow Mr. Johnston to provide the Court with an accurate landscape of his background for the purposes of sentencing–such as how his background as an actor and public figure has impacted his indictment and how it will affect how the Court will determine his ultimate sentence–including considerations regarding deviances from the U.S.S.G. and/or factors influencing the need to avoid disparate sentencing among Mr. Johnston and his co-defendants.

## CONCLUSION

For the foregoing reasons, the Court should grant the instant motion and compel the government to provide the requested discovery.

Dated: September 4, 2024                                  Respectfully submitted,

  *s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
Brand Woodward Law, LP
400 Fifth Street NW, Suite 350
Washington, DC  20001
202.996.7447 (telephone)
202.996.0113 (facsimile)
stanley@brandwoodwardlaw.com

*Counsel for Defendant Jay James Johnston*

## **CERTIFICATE OF SERVICE**

On September 4, 2024, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which will automatically send electronic notification to all parties of record.

   *s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
Brand Woodward Law, LP
400 Fifth Street NW, Suite 350
Washington, DC  20001
202.996.7447 (telephone)
202.996.0113 (facsimile)
stanley@brandwoodwardlaw.com

*Counsel for Defendant Jay James Johnston*